IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION


BETTY COUNCIL,

    Plaintiff,
v.                                                       CASE NO. 1:06-cv-00194-MP-AK

UNITED STATES OF AMERICA,

    Defendant.

_____/

## **O R D E R**

This matter is before the Court on Doc. 19 and 40, Defendant's Motion for Summary Judgment. Plaintiff has filed a Response in Opposition to Defendant's Motion for Summary Judgment, Doc. 36. For the following reasons, Defendant's motion is granted.

### **Factual Background**

Plaintiff Betty Council is a resident of Gainesville, Florida. On August 8, 2005, the date of the alleged trip and fall that is at the heart of this case, Ms. Council was 54 years old. That day, Ms. Council drove herself to the post office, located at 4600 Southwest 34th Street, to drop off mail. According to Ms. Council's deposition testimony, August 8 was a Sunday on which she attended a church service and Sunday school until 2:00 or 3:00 p.m., stopped at her daughter's house in Gainesville for about thirty minutes, and then drove to the post office. Doc. 19, att.7, at 40-41. Despite this brief time line, Ms. Council recalled not arriving at the post office until approximately 8 p.m. that evening, Doc. 19, att. 7, at 30, and emergency dispatchers received a call to respond to the post office at 10:29 p.m. Doc. 19, att. 8.

According to her testimony, as she approached the post office that day, Ms. Council remembered seeing other customers inside. Dressed for church, she was wearing a black dress

and high heeled shoes.  Upon entering, Ms. Council was looking at the mail slot, approximately twelve to fifteen feet from the post office entrance.  Ms. Council did not, however, see the condition of the floor or the rugs.  In her deposition testimony, Ms. Council did not claim any memory of having tripped on the rug.  In fact, the next event she recalled after seeing the mail slot was regaining consciousness, face-down in the post office lobby, with people hovering over her.  Shortly after emergency medical technicians were called, Ms. Council was transported to Shands hospital.  Doc. 19, att. 7, at 43-57.

On November 16, 2005, Ms. Council submitted a claim to the United States Postal Service's ("U.S.P.S.") Tort Claims Coordinator, alleging that the rug in the post office lobby "went up over [her] shoe" causing her to lose her balance and fall to the floor.  The claim estimated Ms. Council's damages, including neck, lower back and knee injuries, at $50,000.  Unfortunately, Ms. Council was unable to name any eyewitnesses to her trip and fall at the time she submitted her claim.  Doc. 19, att. 6.  On June 7, 2006, the U.S.P.S. denied her claim.  Doc. 1, at 2.

On September 25, 2006, Ms. Council filed a complaint under the Federal Tort Claims Act[1] against the U.S.P.S. for damages in excess of $50,000, alleging that she tripped and fell near the entrance of the post office on August 8, 2005.  Specifically, Ms. Council alleged that she fell when her foot became caught on a rug that was not laying flat on the floor.  Doc. 1, at 2.  The U.S.P.S. denied Ms. Council's allegations, and obtained the sworn statements of two witnesses

---

[1] 28 U.S.C. § 2671 et seq.: This section outlines the tort claims procedure for tort claims against the United States government.  The Act itself abrogates sovereign immunity of the U.S. government, rendering it liable in the same manner and to the same extent as private individuals to tort claims, with several exceptions.  Id. at §2674.  It was "'designed to provide redress for ordinary torts recognized by state law.'"  Lambert v. U.S., 198 Fed. Appx. 835, 838 (11th Cir. 2006)(citing Stone v. U.S., 373 U.S. 1129, 1130 (2004)).

*Case No: 1:06-cv-00194-MP-AK*

who observed the condition of the rug before, and immediately after, the fall.

The first witness was Leroy Knopfle, the Alachua County paramedic who arrived at the scene on Monday, August 8, 2005 at 10:35 p.m. for what was dispatched as a "respiratory problem". Mr. Knopfle re-characterized the incident as a "fall" after he arrived at the scene and Ms. Council told him she had fallen. Mr. Knopfle, a fourteen-year veteran of Alachua County Fire Rescue Department, also testified that when he responds to traumas he typically looks for the "mechanism of the injury" and takes note of anything "out of the ordinary" at the scene in order to facilitate medical treatment once he delivers the patient to the hospital. Although Mr. Knopfle could not testify with certainty whether Ms. Council tripped on the rug, he did not recall seeing anything that might have caused the fall, and did not have any independent recollection of the rugs being out of place. Doc. 19, att. 9, at 4-14, 21.

The second witness was Rodney Fletcher, the post office's Supervisor of Maintenance Operations, who responded to the lobby at 10:40 p.m., immediately following the incident. Mr. Fletcher was working a 3 p.m. to 11:30 p.m. shift at the post office that day, and checked the lobby area five to six times to make sure the doors were working properly, the rugs were aligned and flat, and the floors and entryway were free of debris. Doc. 19, att. 13. In his accident investigation report, Mr. Fletcher wrote the following, "[n]o debri [sic] on floors in Lobby. Carpets @ entrance were positioned properly & flat. No wrinkles or elevation in carpet. All sides flat on floor." Doc. 19, att. 11, at 3.

Throughout the discovery process, Ms. Council did not present any affidavits or name any eyewitnesses, including herself, supporting the claim that she fell because the rugs were in an unsafe condition. In essence, the only evidence that Ms. Council tripped on the rug was Ms.

Council's allegation to that effect.

## **Defendant's Motion for Summary Judgment**

In its motion for summary judgment, the U.S.P.S. asserts that there is no evidence of an unsafe condition at the post office on August 8, 2005, when Ms. Council allegedly tripped and fell because there are no witnesses, including Ms. Council, who can testify that the rugs were in an unsafe condition. Furthermore, the U.S.P.S. asserts that even if there was a problem with the rugs, there is no evidence that it should have known of the unsafe condition and failed to exercise reasonable care. In addition, it asserts that if Ms. Council fell, it was due to her failure to exercise ordinary care.

In response, Ms. Council insists that disputed evidence exists regarding the unsafe condition of the rugs and attacks the adequacy of the defense witnesses, Messrs. Fletcher and Knopfle. Furthermore, Ms. Council argues that the defense has not presented any evidence or eyewitnesses to directly contradict the allegation that Ms. Council's foot became caught in the rug, causing her to fall. Lastly, Ms. Council argues that it is unreasonable for the defense to assert that if the rug was out of place, Ms. Council should have seen it, and avoided the hazard.

## **Legal Standard**

Under Fed. R. Civ. P. 56(c), the moving party is "entitled to 'judgment as a matter of law' when the nonmoving party fails to make a sufficient showing of an essential element of the case to which the nonmoving party has the burden of proof." Everett v. Napper, 833 F.2d 1507, 1510 (11th Cir. 1987)(citing Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Therefore, although the court must draw all reasonable inferences from the facts in the light most favorable to the non-moving party, the non-moving party "'must present affirmative evidence in order to defeat a

properly supported motion for summary judgment'" to show that there is a genuine issue for trial. Tidmore Oil Co., Inc. v. BP Oil Co., 932 F.2d 1384, 1387 (11th Cir. 1991)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986)).  Accordingly, "[i]f there is a compete failure of proof on an essential element, there is no longer a genuine issue of material fact." Id. at 1388; see also Clark v. Coats & Clark, Inc., 929 F. 2d 604, 608 (11th Cir. 1991)(explaining the Celotex holding, that under certain circumstances, the movant may meet its Rule 56 burden without negating an element of the non-moving party's claim; the movant can show that the party bearing the burden of proof at trial will not be able to meet that burden).

For claims under the FTCA, courts apply the law of the state where the alleged tort occurred. Lambert, 198 Fed. Appx. at 838.  In Florida, the owner of premises must exercise ordinary care and keep the premises in a reasonably safe condition.  Owens v. Publix Supermarkets, Inc., 802 So.2d 315, 320 (Fla. 2001); Messner v. Webb's City, Inc., 62 So.2d 66, 67 (Fla. 1952).  Accordingly, the owner, "is responsible for injuries due to latent or concealed perils, known to him or which in the exercise of reasonable care, should have been known to him, and which were by the invitee unknown or by the exercise of due care could not have been known . . . in the absence of a warning by the owner."  Messner, 62 So.2d at 67.  Therefore, in order to prevail a plaintiff must prove, "that the premises owner had actual knowledge or constructive knowledge of the dangerous condition 'in that the condition existed for such a length of time that in the exercise of ordinary care, the premises owner should have known of it and taken action to remedy it."  Owens, 802 So.2d at 320.  At the same time, the owner is entitled to assume that an invitee will perceive obvious dangers, "which would be obvious to him upon the ordinary use of his own senses," and is not required to give notice or warning.  Id.; see

also Matson v. Tip Top Grocery Co., 9 So.2d 366 (Fla. 1942)(finding that "the law does not require a proprietor of a public place to maintain his premises in such condition that an accident could not possibly happen to a customer.").

Both the Messner and Owens cases are helpful in analyzing the present case.  In Messner, the customer alleged that she had stepped on a "hard rolling object" while walking down an aisle that caused her to slip and fall.  62 So. 2d at 66.  Immediately after her fall, store clerks searched for the object but were unable to find anything.  Id.  As she exited the store, the customer spotted a two-inch long nail laying five and half feet to the left of where she had fallen, near the store's entrance.  Id. at 66-67.  Convinced the nail had caused her fall, the customer brought a claim against the store.  Id.  The Florida Supreme Court, assuming that the nail caused the fall and that it was a latent or hidden danger, held the facts were not legally sufficient to impose liability on the store.  Id.  Likewise, the court found that the customer had failed to present evidence of how the nail ended up on the floor, how long it had been on the floor, or that store employees knew it was on the floor.  Id.   Therefore, summary judgment on her claim was proper.  Id.

In Owens, another slip-and-fall case from the Florida Supreme Court, the court found that summary judgment was improper where there was evidence that a customer had slipped on a banana peel.   802 So.2d at 317-318.  Although the customer had not seen the banana peel herself prior to falling, she presented the testimony of another customer that had witnessed the slip and fall, as well as the cause of the fall, a mushed and brown piece of banana without the peel.  Id. at 317.  The customer also presented evidence that nine slip and fall accidents had occurred in that particular grocery store within the last nine months.  Id. at n.3.  Moreover, although store employees were responsible for inspecting the floors periodically, the store did not maintain

inspection records or present evidence of the last time the aisle was inspected.  Id.

Applying the logic of these cases to Ms. Council's claim, the Court concludes that she has not met her burden in opposing summary judgment.  Viewing the facts in a light most favorable to Ms. Council, the Court finds that the Plaintiff has failed to make a sufficient showing of an essential element of her case to which she has the burden of proof.  That is, similar to the customer in Messner, Ms. Council claims that an object on the floor, here, a misplaced rug, caused her to fall.  However, like in Messner, Ms. Council presented no evidence of how the rug became misplaced, how long it was misplaced, or whether any post office employees knew it was misplaced.  Moreover, just as the store employees in Messner searched the area for the cause of the fall, the postal employees in the present case examined the area for any mechanisms of the fall, including signs that the rug was out of place.  Neither they, nor any other eyewitnesses, can testify as to the condition of the rug at the time of the fall.  Although it is not a dispositive factor, like the customer in Messner, even Ms. Council cannot say whether the rug was out of place aside from her bare assertion that it was the cause of her fall.

Furthermore, the present case is readily distinguishable from the Owens case.  In Owens, the customer presented an eyewitness who testified to seeing the fall and the hazardous condition that caused it.  Here, Ms. Council has no witnesses to either the fall or the hazardous condition.  The customer in Owens also presented evidence of a pattern of slip and falls at that particular store; Ms. Council has no such evidence.  Moreover, the defendant in Owens kept no maintenance records and could not say for sure whether an store employee had checked the floors on the day of the fall.  In the present case, the defendant has presented testimony, reports, and an affidavit indicating that the floors were checked several times on the day of the fall,

including times before and after the alleged incident.

In conclusion, it is undisputed that the defendant had a legal duty to Ms. Council as a landowner under Florida law.  However, there is simply no evidence that the U.S.P.S. breached its duty by failing to exercise ordinary care, or keep its premises in a reasonably safe condition. Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

Defendant's Motion for Summary Judgment, Doc. 19 and 40, are GRANTED, and the Clerk is directed to close this case.

**DONE AND ORDERED** this *6th* day of March, 2008

*s/Maurice M. Paul*
Maurice M. Paul, Senior District Judge